## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MIGUEL BERRIOS VELEZ,**
        **Plaintiff**


        **v.**                                    **Civil No. 03-1312(JAG)**

**JO ANNE BARNHART,**
**Commissioner of Social Security**
        **Defendant**

---

### MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Miguel Berrios-Vélez (hereafter "Berrios") filed a complaint seeking judicial review of the decision of the defendant, Commissioner of Social Security (hereafter "the Commissioner") denying him disability benefits pursuant to 42 U.S.C. § 205(g) and 405(g), Titles XVI and II of the Social Security Act (**Docket No. 1**). Berrios asks for judgment modifying the decision of the Commission and to award disability benefits during the period of disability.  The Commissioner answered the complaint and filed a memorandum of law in support of the Commissioner's determination (**Docket Nos. 17, 18**). Berrios also filed a memorandum of law in support of his position (**Docket No. 20**).   The matter was referred to the undersigned for a report and recommendation (**Docket Nos. 22, 23**).

After careful review of the administrative record and the briefs on file, this Magistrate-Judge **RECOMMENDS** that the matter be REMANDED for the limited purpose of determining if during the relevant time period, from October 31, 1991 to January 8, 1995, there existed a significant number of jobs in the national economy that Berrios could perform.  It is also recommended that the ALJ decision be AFFIRMED in all other respects.

# I.      General  Background

Berrios was born on January 3, 1953, and he has an eighth grade education (Tr. 62, 84).

For the most part he has lived in Puerto Rico, with the exception being the time he lived in New

York, from 1993 to 1995.  He has past relevant work as a construction worker (Tr. 84-85, 230).

Berrios seeks disability insurance benefits alleging an inability to work from October 31, 1993 to

January 3, 1995 due to a visual impairment, spinal arthritis, a left knee condition, high blood

pressure, a possible slipped disc and mental impairment (Tr. 80).

Berrios's application for social security benefits was originally filed on September 1, 1995

(Tr. 62-64).  Berrios was denied benefits initially and upon reconsideration (Tr. 51-53, 56-69). An

administrative hearing was held on December 11, 1996 (Tr. 33). Thereafter, on August 18, 1997,

Administrative Law Judge (hereafter "ALJ") Robin J. Arzt found that Berrios was not disabled

pursuant to the Social Security Act (Tr. 15-21).  Berrios sought review by the Appeals Council and

on October 28, 1998, the Appeals Council affirmed the decision of the Administrative Law Judge

(hereafter "ALJ"), rendering it the final decision of the Commissioner (Tr. 4-5 ). The matter was

appealed to the U.S. District Court for the Southern District of New York, and upon stipulation

by the parties the case was remanded to the Commissioner pursuant to sentence six, 42 U.S.C.

§ 405(g).   The Stipulation and Order was entered on May 11, 1999 (**Docket No. 1**).   The

District Court did not enter final judgment, but a docket notation on the same date states, "Case

closed purs. (sic)  to instructions of Judge Rakoff".  *Id.*

On June 8, 1999, the Appeals Council vacated the final decision of the Commissioner in

the case and remanded the matter for further proceedings.  More particularly, the Appeals Council

directed the ALJ to obtain additional evidence to clarify the opinion of Dr. W. H. Chen that

Berrios was limited to standing/walking for less than two hours per day, admit evidence from the Lincoln Hospital, and to address the issue of a possible mental impairment (Tr. 255).   The Appeals Council directed the ALJ to take any further action needed to complete the administrative record, and to issue a decision in accordance therewith.  (Tr. 256).

In the meantime on June 7, 1999, the Commissioner was served with summons and complaint (**Docket No. 1**).  Berrios returned to live in Puerto Rico in 2000 (Tr. 319).

Following remand, a second administrative hearing was held in San Juan, Puerto Rico, on January 9, 2001 (Tr. 226).  Berrios and a vocational expert testified at the January 9, 2001 hearing (Tr. 226).  During the hearing Berrios' counsel requested that the case be decided on the closed period from October 31, 1993, to January 8, 1995, inasmuch as Berrios had earnings in 1996, 1997 and 1998 (Tr. 220, 228, 436).

 Upon remand ALJ Solomon Goldman determined that the plaintiff was not disabled under the Social Security Act, rendering his decision on February 22, 2001 (Tr. 218-225).  Berrios did not  appeal the decision to the Appeals Council.  Nonetheless, in a remand situation if " no exceptions are filed and the Appeals Council does not assume jurisdiction of [the] case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand." 20 C.F.R. Sec. 404.984(d).  Accordingly, the ALJ's decision is the final decision of the Commissioner of Social Security

On March 13, 2003, the action was transferred from the U.S. District Court for the Southern District of New York to this District (**Docket No. 1**).

**II.      Discussion**

**A.       Legal Standard**

At issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. 405(g);  *Richardson v. Perales,* 402 U.S. 389, 399 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nieves v. Secretary of Health and Human Services,* No. 91-2273, 1993 WL 126029 at *2 (D.P.R. Jan. 28, 1993) (citing *Universal Camera v. N.L.R.B.,* 340 U.S. 474, 477 (1951)). The Commissioner has the duty of weighing the evidence and resolving material conflicts with testimony.  *See Richardson,* 402 U.S. at 400;  *González-García v. Secretary of Health and Human Services,* 835 F.2d 1, 3 (1st Cir. 1987).   Accordingly, the Court  "must affirm the [Commissioner's]  resolution, even if the record arguably could justify a different resolution, so long as it is supported by substantial evidence."  *Rodríguez-Pagán v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir. 1987).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he  is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant  is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  Also, the impairment must have arisen prior to the date that his insured status expired.  *See Torres v. Secretary of Health and Human Services*, 845 F.2d 1136, 1138 (1st Cir. 1988); *Cruz-Rivera v. Secretary of Health and Human Services*, 818 F.2d 96 (1st Cir. 1986).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled.  20 C.F.R.  §§ 404.1520; *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982).  Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied.  §§ 404.1520(b).  If he is not, the decision-maker proceeds to step two, through which he determines whether the claimant has a medically severe impairment or combination of impairments.  *See* §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  §§ 404.1520(d);  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he has performed in the past.  If the claimant is able

to perform his previous work, he is not disabled.  §§ 404.1520(e).  If the claimant cannot perform this work, the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of his residual functional capacity, as well as his age, education, and work experience.  The claimant is entitled to disability benefits only if he is not able to perform other work.  §§ 404.1520(f).

The claimant  has the burden, under steps one through four, of proving that he cannot return to his former employment because of his alleged disability.  *Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

The Court's review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*,  172 F.3d 31, 35 (1st Cir. 1999); *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986); *Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence has been defined as "more than a mere scintilla" and "such as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401  (1971).

Berrios' claim is limited to a time of alleged disability form October 31, 1993 through January 8, 1995.

**A.      Conclusions of Law**

The ALJ determined that during the time period in question, the medical evidence indicates that Berrios had degenerative disc disease at L5-S1, left knee minimal degenerative changes and hypercholesterolemia (Tr. 221).  The ALJ also concluded at step five of the sequential evaluation process, that during the relevant time period, Berrios was unable to perform his past relevant work, but that he retained the residual functional capacity to lift and carry up to 20 pounds, could stand and walk up to six hours, but he could not engage in activities which require prolonged, repeated, vigorous bending, stooping and crouching (Tr. 222). The ALJ also determined that although Berrios had received treatment for a mental condition, during the period at issue there was no medically determinable mental impairment (Tr. 221). Finally, the ALJ found that during the time period in question Berrios, retained the residual functional capacity to perform a significant range of light work, and using the Medical Vocational Guidelines as a framework, concluded that Berrios is capable of performing such work. *Id.*  Accordingly, the ALJ determined that Berrios is not disabled within the meaning of the Social Security Act (Tr. 223).

The ALJ made the following findings:

1)     Berrios meets the nondisability requirements for a period of disability and is insured for benefits through December 31, 2000 (Tr. 224).

2)     He has not  engaged in substantial gainful activity during the requested closed period of disability from October 31, 1993, up to January 8, 1995.  After the date of alleged onset of disability, Berrios worked during 1996, 1997 and 1998.  The wages during these years are posted in Berrios' earnings record and constitute substantial gainful activity (Tr. 224).

3)      During the closed period at issue, Berrios had degenerative disc disease at L5-S1, left knee minimal degenerative changes and hypercholesterolemia. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (Tr. 224).

4)      Berrios's allegations regarding his limitations are not totally credible (Tr. 224).

5)      Claimant has the residual functional capacity to lift and carry up to 20 pounds, stand and walk up to six hours. He cannot engage in activities which require prolonged repeated vigorous bending, stooping and crouching (Tr. 224) and

6)      Is unable to perform his past relevant work (Tr. 224).

7)      Berrios is a younger individual with a limited education who does not have transferability of skills (Tr. 224).

8)      Claimant has the residual functional capacity to perform a significant range of light work (Tr. 225).

9)      Although Berrios' exertional limitations do not allow him to perform the full range of light work, using Medical Vocational Rules 202.16 and 202.18 as a framework for decision making, there are a significant number of jobs in the national economy that Berrios can perform. These jobs include ticketer, packager, inspector and sorter. During the time period in question, these jobs were available in significant numbers in the national economy (Tr. 225).

10)     Berrios was not under a disability, as defined in the Social Security Act, at any time from October 31, 1999 up to January 8, 1995 (Tr. 225).

Berrios argues that the decision of the Commissioner is not supported by substantial evidence taking the record as a whole. More particularly, Berrios contends that the ALJ did not properly analyze the medical evidence; did not comply with the Appeal Council's Order to obtain additional evidence from Dr. W. H. Chin; erred in his assessment of Berrios' allegations of pain; and, erred in determining there were substantial jobs in the national economy that Berrios could perform.

**1.      Assessment of the Medical Evidence**

Berrios argues that the ALJ erred in not giving controlling weight to the opinion of Berrios' treating physician, Dr. W. H. Chen (hereafter "Dr. Chen").  He contends that the ALJ failed to give any special consideration to the Residual Functional Capacity Assessment (hereafter "RFCA") of Dr. Chen.  Berrios mistakenly argues that the RFC prepared by Dr. Chen is the only one contained in the record.  Berrios also argues that the ALJ spent "very little time" attempting to counter Dr. Chen's uncontroverted statements and finally, Berrios asserts that the ALJ made his own interpretation of the medical records and subjected his own judgment for an uncontroverted medical opinion.

Generally, the ALJ gives "more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(d)(2). Indeed, the ALJ will "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *Id.*  The First Circuit Court of Appeals has addressed the distinction between cases where the opinion of the treating source should be given "controlling" weight and where lesser weight should be ascribed, observing that:

> [The regulation] does not mandate assignment of some unvarying weight to *every* report in *every* case. The ALJ is not required automatically to give controlling weight to any 'treating' doctor's report, denominated as such.... "Controlling weight" may be assigned if the report meets the specified qualifications [of 20 C.F.R. § 404.1527(d)(2) ] and is not inconsistent with other substantial evidence.

*Rivera v. Secretary of Health & Human Servs.*, 986 F.2d 1407, No. 92-1896, 1993 WL 40850, at *3 (1st Cir. Feb.19, 1993) (table decision).

The ALJ adequately explained his reason for not giving controlling weight to the decision of Dr. Chen.   The ALJ acknowledged that Dr. Chen is the treating physician of Berrios, but found that his assessment and opinion conflicted with the other evidence of record (Tr. 222).  The ALJ noted that Berrios' record includes observations made by all physicians who had examined claimant.  *Id.*  He specifically referred to that medical evidence when highlighting  the stability of Berrios' condition and his ability to sit, stand and walk and range of movement of the back.  *Id.* The ALJ specifically noted that these findings disagreed with the assessment made by Dr. Chen. *Id.*   Based upon the foregoing, the undersigned cannot say that the ALJ erred in his assignment of weight to Dr. Chen's opinion.  Rather, the ALJ considered it along with other medical evidence on record.

Berrios mistakenly claims that the only RFCA contained in the record is that of Dr. Chen. He goes on to argue that in not giving controlling weight to Dr. Chen's RFCA, the ALJ substituted his own expertise for that of the treating physicians.  This argument is not borne out by the record.

A Residual Physical Functional Capacity Assessment was completed by a state agency consultant named Dr. C. Pesquera (hereafter "Dr. Pesquera") on November 17, 1995 (Tr. 65-73). In such RFCA it was determined that Berrios could occasionally lift 50 pounds and frequently lift 25 pounds (TR. 67).  It also reflected that Berrios could stand and/or walk about 6 hours  in an 8-hour day and sit about 6 hours in an 8-hour day (Tr. 67).  Dr.  Pesquera found Berrios unlimited in his pushing and/or pulling capabilities (Tr. 67).  Explanation of these findings included complaints of low back pain and joint pain; straight leg raising bilaterally was positive; gait and state were normal; and results of a lumbosacral x-ray examination reflected degenerative disc

disease at L5-S1 (Tr. 67).  The assessment was affirmed as written on March 12, 1996, by Dr. M. Verdrager (Tr. 73-74).

The record contains two RFCA reports completed by Dr. Chen; one dated April 25, 1997 and one dated September 23, 1998 (Tr. 152-163; 261-267).  In the 1997 assessment Dr. Chen indicated that Berrios was limited to carrying up to 10 pounds; he was limited to less than two hours per day of standing and/or walking; he was limited to sitting up to six hours per day and limited in pushing and/or pulling (Tr. 162).  The 1997 report indicates that Dr. Chen had last seen Berrios on March 20, 1997 (Tr. 152).   In making his determination, Dr. Chen relied upon a MRI of the lumbar spine dated August 31, 1995, which indicated a bulging disc at L5-S1 and left lateral herniation (Tr. 162).  Dr. Chen's second RFCA indicates that Berrios can sit and stand for ten minutes at a time and can sit, stand and/or walk for less than two hours (Tr. 265).  He indicated that Berrios could lift and carry less than ten pounds (Tr. 266).  Also he found that Berrios had significant limitations in reaching, handling or fingering (Tr. 266).  Dr. Chen identified clinical findings of backache and an MRI showing herniated disc at L5-S1 which show Berrios' medical impairments (Tr. 262).

It appears that the ALJ relied upon the RFCA made by the state agency consultants. In *Berrios López v. Secretary of Health and Human Services* , 951 F.2d 427, 431 (1st Cir. 1991), the First Circuit found the reports of two non-examining, non-testifying physicians to constitute substantial evidence of the ALJ's finding regarding claimant's residual functional capacity because: 1) the reports contained written comments and medical conclusions rather than just "the mere checking of boxes denoting levels of residual functional capacity," 2) the reports were consistent

with each other and 3) the  physicians had available to them most, although not all, of the medical evidence for their review.

Here, the state agency medical consultants provided specific reasons and support for their opinions concerning Berrios' residual functional capacity which showed they were grounded in the evidence in the record.  More so, both the RFCA's submitted by Dr. Chen relied upon subjective testing that took place after the time period in question.  Specifically the MRI Dr. Chen refers to is dated August  31, 1995, yet Berrios claims impairment only up to January 8, 1995. Berrios argues that the ALJ erred in not following the ALJ's directives to obtain additional evidence from Dr. Chen. It must be noted, however, that when Berrios initially sought disability benefits he did not limit his period of disability.  By the time he attended his second administrative hearing, Berrios had limited his disability period to January 8, 1995, and Dr. Chen's diagnostic studies upon which he relied took place outside that date.  Accordingly, the undersigned finds no error by the ALJ.

It is well established that an ALJ is not at liberty to ignore medical evidence or substitute his own view for uncontroverted  medical opinions.  *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994).  And, although the ALJ may assess the credibility of testimony and choose between conflicting evidence, he may not substitute his own impression of an individual's health for uncontroverted medical opinion.  *Carrillo Marin v. Secretary of Health and Human Servs*. 758 F.2d 14, 16 (1985).

After reviewing the evidence of record it cannot be said that the ALJ substituted his own expertise for that of the medical opinions of the experts.  The evidence supports the ALJ's determination regarding Berrios' residual functional capacity. Contrary to Berrios's arguments, the

ALJ properly considered and analyzed the medical evidence.  Indeed, in reviewing the ALJ's decision it is clear that he considered all the evidence, both favorable and unfavorable. The ALJ discussed the evidence in detail, explained why he gave weight to certain evidence but not to other.  Thus, it is concluded that the ALJ's decision is supported by substantial evidence in the record and as such, he did not err in making his determinations.

### 2.      Pain

Berrios next contends that the ALJ did not appropriately assess his complaints of pain. More particularly, Berrios argues that the ALJ did not discuss his daily activities, the nature of his pain, his repeated complaints of pain, and failed to effectively address the issue of his medication.

When a claimant alleges disability due to pain, in assessing the claimant's residual functional capacity, the ALJ must first determine whether the claimant has a medically determinable impairment that is reasonably likely to produce the pain claimed. 20 C.F.R. § 404.1529(a) and (b); *Nguyen v. Chater*, 172 F.3d 31, 34 (1ˢᵗ Cir. 1999). If so, the ALJ must assess the severity of the pain and the extent to which pain impedes the claimant's ability to work by considering all of the pertinent evidence of record including "claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment." *Id., see also DaRosa v. Secretary of Heath and Human Servs.*, 803 F.2d 24, 25-26 (1st Cir. 1986). "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Secretary of Health and Human Servs.*, 869 F.2d 622, 623 (1st Cir.1989).

Additionally, when a claimant complains that pain or other subjective symptoms are a significant factor limiting the ability to work, and those complaints are not fully supported by

medical evidence contained in the record, the ALJ must undertake further exploration of other information. *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 23 (1st Cir.1986). The ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his pain; (5) treatment, other than medication, the claimant receives or has received for relief of his pain; (6) any measures the claimant uses or has used to relieve pain; and (7) other factors concerning the claimant's limitations and restrictions due to pain. *20 C.F.R. § 404.1529(c)(3); See Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 29-30 (1st Cir.1986); SSR 88-13. In addition to considering the foregoing factors, the ALJ is entitled to observe the claimant, evaluate his demeanor, and consider how the claimant's testimony fits with the rest of the evidence. *See Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987).

Berrios's contention that the ALJ did not adequately assess his complaints of pain are not supported by the record.  The  ALJ found that Berrios' allegations of back, chest and joint pain not entirely credible (Tr. 222).  In doing so, the ALJ referred to the documentary reports as well as the reports of the treating and examining physicians during the period at issue.  The ALJ further noted that during the time in question Berrios was treated with a mild analgesic and that he responded to physical therapy. *Id.*  Additionally, at the hearing held on January 9, 2001, the ALJ made specific inquiry into Berrios's complaints of pain during the relevant time period; the medication prescribed to treat the same and its side effects was questioned , if the weather had any effect, limitation of movements, and finally Berrios was questioned in regards to his daily

activities (Tr. 240-244). Finally, the ALJ was entitled to observe Berrios, evaluate his demeanor, and consider how his testimony fit with the rest of the evidence.

The record adequately supports the ALJ's conclusions regarding Berrios's subjective complaints as to pain, symptoms and functional limitations.  Berrios's contention that the ALJ did not properly evaluate his complaints of pain is not borne out by the record.

### 3.        Substantial Jobs in the National Economy

Berrios contends that the ALJ erred in using the Medical Vocational Guidelines (hereafter "the Grid") as a framework to determine that Berrios is not disabled.  The record shows that the ALJ relied upon Rules 202.16 and 202.18 as well as the testimony of a vocational expert in forming his conclusion.  Berrios argues that the two rules conflict with one another, and in using these rules the ALJ seemed to ignore the question of whether Berrios could communicate in English.  He further argues that the ALJ erred in failing to clarify the language requirements and skill level of Berrios' past relevant work and failed to expand the vocational expert's testimony as to whether the number of other jobs cited in the regional economy were actually substantial.

The Grid is used to simplify the ALJ's task of determining whether a claimant is able to perform significant gainful work, which is determinative in establishing claimant's disability or non-disability status.  *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 2 (1st Cir. 1982).  *Id.*  The Grid consists of four factors (age, education, work experience, and residual work capacity) that are used to determine the existence of a claimant's disability.  *Id.*  Furthermore, the Grid has three different tables, one each for residual work capacities, such as "sedentary," "light" and "medium" work.  *Id.*  The ALJ selects the appropriate row and table depending on the characteristics of the claimant.  *Id.* at 3.

The Grid "can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). "If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. *Ortíz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). When the Grid is used as a framework, and the reduction of the occupational base is more than marginal, the testimony of a vocational expert is required. *Burgos- López v. Secretary of Health & Human Serv.,* 747 F.2d 37, 42 (1st Cir. 1984).

The ALJ did not use a straightforward application of the Grid. The ALJ found that Berrios had nonexertional limitations, in that he could not engage in prolonged repeated vigorous stooping and crouching (Tr. 224). See SSR 83-10. The presence of significant nonexertional limitations will preclude the Secretary from exclusively relying on the Grid to resolve the issue of disability. *DaRosa* v. *Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir. 1986);*Burgos Lopez* v. *Secretary of Health and Human Services,* 747 F.2d 37, 39 (1st Cir. 1984). The ALJ did, however, use the Grid as a framework and specifically referred to Rules 202.16 and 202.18, both rules providing for a residual functional capacity to perform light work. Rule 202.16 provides for a finding of not disabled if the claimant is a younger individual, illiterate or unable to communicate in English, with previous work experience of "unskilled or none". Rule 202.18 of the Grid provides for a finding of not disabled if the claimant is a younger individual, has a limited education, and has previous work experience of "skilled or semiskilled" work with transferrable skills. It appears that by referring to both rules, the ALJ found that Berrios' past relevant

construction work fit under the categories of unskilled, skilled or semiskilled work[1].  Also, by referring to both rules the ALJ somewhat confusingly determined both that Berrios could not communicate in English and that he could communicate in English.  Nonetheless, within the text of the ALJ's written decision he makes specific mention of the fact that Berrios cannot communicate in English. The decision of the ALJ makes no reference to the skill level of Berrios' past relevant work as a heavy equipment operator, but merely refers to it as "of a heavy character" (Tr. 222).  The Grid, however, was used only as a framework, and since Berrios could not perform his past relevant work and had nonexertional limitations the ALJ also elicited testimony from a vocational expert.

The ALJ found that Berrios has a limited eighth grade education and is unable to communicate in the English language. The record supports this finding and also indicates that Berrios, who was born in Puerto Rico, reads and speak Spanish (Tr. 40).  During the closed time period for disability, that is from October 31, 1993 to January 8, 1995, Berrios lived in New York (Tr. 237).  Testimony was elicited from a vocational expert to determine what jobs Berrios could have performed during the time period in question (Tr. 236).  The ALJ asked the vocational expert if "during this critical period, could the claimant have returned to his former employment or performed any other jobs within the Puerto Rican and national economies?" (Tr. 249). The vocational expert testified that Berrios could not return to his past relevant work, but based upon the hypothetical posed by the ALJ, other jobs Berrios could have performed would be a ticketer, hand packager of small pieces, inspector of a finished product in the garment industries, food

---

[1]The vocational expert testified that based upon certain criteria Berrios could perform unskilled, light work (Tr. 249).

inspector, pharmaceutical or electronic, inspector, or sorter (Tr. 249). The vocational expert

explained that these jobs are "unskilled, light, but worker[sic] change position at will, one to two

step routine, repetitive"(Tr. 249).   The ALJ then asked the vocational expert "what were the

incidence of those jobs within the economy at that time" (Tr. 249). The vocational expert

responded, "To the last census of Department of Labor, Puerto Rico Department of Labor was

1,163,000 in place.  Of these, of these categories you can find in significant numbers in the

economy and in the industry 200 to 300 positions." (Tr. 249).  The vocational expert clarified that

in the different factories there would be 200 or 300 of these jobs (Tr. 249-250).

> The ALJ relied upon the vocational expert's opinion that there were jobs available in the

national economy that Berrios could perform.  While the ALJ posed the correct question and

asked for the number of jobs in the national economy, the vocational expert referred to jobs in *the*

*economy of Puerto Rico*.  The vocational expert did not render an opinion as to the number of

jobs in the national economy.  Were it within the ALJ's province to rely strictly on the Grid, there

were be no problem with a finding of disability based upon Rule 202.16, in light of Berrios' New

York residence and his inability to communicate in English during his dates of disability.  "The grid

rules are based on the existence of jobs in the national economy. To what extent the Puerto Rican

economy mirrors the national economy is not, we tend to think, a matter of common knowledge

such that Spanish can simply be substituted for English and the grid applied on the assumption

that if jobs exist in significant numbers in the national economy for one fluent in English, they must

similarly exist in significant numbers in Puerto Rico and elsewhere in the nation for a person of

similar age, education, and vocational background fluent in Spanish." *Figueroa-Rodríguez v.*

*Secretary of Health & Human Servs.*, 845 F.2d 370, 372 (1st Cir.1988).  As discussed above, strict application of the Grids is not possible because of Berrios' nonexertional limitations.

The problem with reliance upon the vocational expert's testimony lies with Berrios' inability to communicate in English and his residence in New York, not Puerto Rico  during the relevant time period. Had Berrios resided in Puerto Rico during the relevant time period, his ability to communicate in Spanish and not English would not be an issue. As the First Circuit has stated, "it is the ability to communicate in Spanish, not in English, that is vocationally relevant in Puerto Rico."  *Arce Crespo* v. *Secretary of Health and Human Services,* 831 F.2d 1, 6 (1st Cir. 1986).

It is unclear from the vocational expert 's testimony if the jobs identified exist in significant numbers in the national economy, that economy encompassing New York and not Puerto Rico, for an individual with Berrios's communicative, physical and nonexertional limitations.  Therefore, the matter must be REMANDED, once again, for additional vocational expert testimony to clarify if during the relevant time period, from October 31, 1991 to January 8, 1995, there existed a significant number of the jobs in the national economy that Berrios could perform.  The ALJ must keep in mind that despite the fact that Berrios now resides in Puerto Rico, during the relevant period of time he resided in New York where the prevalent language is English, not Spanish.

## III.   Conclusion

After careful review of the administrative record and the briefs on file, this Magistrate Judge **RECOMMENDS** that the matter be **REMANDED** for the limited purpose of determining if during the relevant time period, from October 31, 1991 to January 8, 1995, there existed a significant number of the jobs in the national economy that Berrios could perform.  It is further RECOMMENDED that the Commissioner's decision be  **AFFIRMED** in all other respects.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).   The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 24th day of August, 2005.


S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**